JOSEPH J. GALLENTINE, APPELLEE, V. BLANCHE FULLER-
TON ET AL., APPELLANTS.

FILED FEBRUARY 17, 1903. No. 12,494.

1. County Treasurer: PRIVATE TAX SALE: FILING REPORT: REVENUE
LAW. The county treasurer is without authority to sell lands
at private tax sale until he has made and filed in the office of
the county clerk the report required by section 113 of the gen-
eral revenue law.

2. Filing Report: TAX-SALE CERTIFICATE: PRESUMPTIVE EVIDENCE.
But a tax-sale certificate is presumptive evidence that such re-
port was made and filed in due time.

3. Revenue Law: MEANING: DECISIONS. The meaning of section 179,
and section 2, article 5, of the revenue law, as unfolded by the
previous decisions of this court, is that an action to foreclose
a tax-lien may be maintained at any time within seven years
from the date of the tax-sale certificate.

4. Evidence. Evidence examined, and found sufficient to warrant the
conclusion of the trial court that the presumption of regularity
resulting from the tax-sale certificate was not rebutted, and
that the subsequent taxes included in the decree had been paid
plaintiff.

APPEAL from the district court for Buffalo county. Foreclosure of tax lien. Heard below before SULLIVAN, J. Judgment for plaintiff. *Affirmed.*

*Willis L. Hand* and *John M. Ragan,* for appellants.

*Frank E. Beeman, contra.*

SULLIVAN, C. J.

This action was brought by Gallentine against Blanche Fullerton and others to foreclose a tax lien upon real estate in Buffalo county. The answer of defendants is a general denial, coupled with a plea of the statute of limi-

Syllabus by court; catch-words by editor.

tations. The court entered a decree in accordance with the prayer of the petition, and defendants have appealed.

The first contention is that the tax sale was illegal, and that the court, therefore, erred in allowing interest for two years at the rate of 20 per cent. and an attorney fee equal to 10 per cent. of the amount of the decree. The plaintiff purchased the land in question at private tax sale, and there is in the record no evidence tending to show that the county treasurer had previously made and filed with the county clerk the report required by section 113 of the revenue law. It was held as far back as *State v. Helmer*, 10 Nebr., 25, that the treasurer is without authority to sell at private sale until such report has been made and filed; and this decision has been repeatedly approved. *Stegeman v. Faulkner*, 42 Nebr., 53; *Adams v. Osgood*, 42 Nebr., 450; *Medland v. Linton*, 60 Nebr., 249; *Johnson v. Finley*, 54 Nebr., 733. But the tax-sale certificate is presumptive evidence of the regularity of all proceedings prior to the sale (sec. 116, ch. 77, art. 1, Compiled Statutes); and this presumption is not overborne by the proof in this case. The fact that the treasurer's report was not found in the office of the county clerk, is, in view of the character of the search and the manner in which the records had been kept, without weight or value as evidence.

It is said that there is no proof of the payment of subsequent taxes, but we think there is. The deputy treasurer testified without objection, from the records of his office, that "under the sale" to plaintiff subsequent taxes amounting to $14.85 had been paid. Evidently the idea the witness intended to convey was that these taxes had been paid by the holder of the tax-sale certificate.

The argument in support of the contention that the right to maintain an action for the foreclosure of a tax lien is barred at the expiration of five years from the date of the tax-sale certificate is logical and convincing, but it comes too late. The meaning of section 179, and section 2, article 5, of the revenue law, as unfolded in a series of

decisions, which are now a rule of property, is that an action to foreclose a tax lien may be brought at any time within seven years from the date of the tax sale.

NOTE.—*Taxation.*—Under the ancient Roman state, the farmers of the public revenue were called *publicani.* Their official name was derived from *publicum,* which signified anything belonging to the state. It was sometimes used as synonymous with vectigal. *Vectigalia* was the general term for all the public revenues of the Roman state. The revenues which Rome derived from conquered countries, consisted chiefly of tolls, tithes, the *scriptura,* or tax which was paid for the use of public pasture-lands, *salinæ*—the duties paid for the use of mines and salt-works—and harbor-dues. This last is supposed by some writers to have been the original method of taxation, for the reason that *vectigalia* is derived from *veho,* to carry, and is generally believed to have originally signified things imported and exported *quæ vehebantur.* The censors—who fixed the terms on which the revenues were let—sold the revenues at a time stated, generally in the month of Qunctilis (July); and the sale was for a *lustrum*—five years. This corresponds to our modern (Nebraska) tax-sale, on the first of November. Indeed, if we examine our statute beside Roman law, it will be hard to determine in what manner the modern dealer in tax-titles differs in principle from the ancient publican. Taxation, as Adam Smith says, is an attribute of sovereignty. The Roman state transferred a portion of its sovereign power to the publican, and the state of Nebraska does the same with the buyer of tax-titles.—W. F. B.